## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

ARIANNY CELESTE LOPEZ, CARMEN
ELECTRA a/k/a TARA LEIGH PATRICK,
CIELO JEAN "CJ" GIBSON, DENISE
TRLICA a/k/a DENISE MILANI, EVA
PEPAJ, IRINA VORONINA, JESSICA
HINTON a/k/a JESSA HINTON, KEELEY
REBECCA HAZELL, MARIANA
DAVALOS, PAOLA CAÑAS, KATARINA
VAN DERHAM, JESSICA GOLDEN,
TIFFANY GRAY a/k/a TIFFANY TOTH,
VIDA GUERRA, HEATHER RAE EL
MOUSSA a/k/a HEATHER RAE YOUNG,
INA SCHNITZER a/k/a JORDAN CARVER
MASHA "MALU" LUND, and TYRAN
RICHARD,

                  Plaintiffs,

        - against -

THOMAS J. PITNER, individually, and as an
officer, director, shareholder, member and/or
principal of JOHN DOE ENTITY d/b/a
MTM's Bar and JOHN DOE
ENTITY d/b/a MTM's Bar,

                  Defendants.

Case No.

Plaintiffs Arianny ARIANNY CELESTE LOPEZ, CARMEN ELECTRA a/k/a TARA

LEIGH PATRICK, CIELO JEAN "CJ" GIBSON, DENISE TRLICA a/k/a DENISE MILANI,

EVA PEPAJ, IRINA VORONINA, JESSICA HINTON a/k/a JESSA HINTON, KEELEY

REBECCA HAZELL, MARIANA DAVALOS, PAOLA CAÑAS, KATARINA VAN

DERHAM, JESSICA GOLDEN, TIFFANY GRAY a/k/a TIFFANY TOTH, VIDA GUERRA,

HEATHER RAE EL MOUSSA a/k/a HEATHER RAE YOUNG, INA SCHNITZER a/k/a

JORDAN CARVER, MASHA "MALU" LUND, and TYRAN RICHARD (collectively,

"Plaintiffs"), file this Complaint against THOMAS J. PITNER, individually, and as an officer,

director, shareholder, member and/or principal of JOHN DOE ENTITY d/b/a MTM's Bar and

JOHN DOE ENTITY d/b/a MTM's Bar (collectively, "Defendants") respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, MTM's Bar located at 7712 Clinton Hwy, Powell, Tennessee 37849 (**hereinafter referred to as the "Strip Club" or "MTM"**).

2.     As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act"; d) Common Law Right of Publicity; e) Violation of the Tennessee Consumer Protection Act of 1977, T.C.A. 47-18-101 to 47-18-570; f) Defamation; g) Negligence/Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3.     In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.     This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.     Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.     Defendant JOHN DOE ENTITY, is presumably a company formed under the laws

of the state of Tennessee. Upon information and belief, JOHN DOE ENTITY operates MTM's Bar, which is located at 7712 Clinton Hwy, Powell, Tennessee 37849.

8.      According to publicly available records, Defendant Thomas J Pitner, is an Owner and/or CEO of MTM's Bar. Upon information and belief, Thomas J Pitner can be located at 7712 Clinton Hwy, Powell, Tennessee 37849.

9.      Venue is proper in the United States District Court for the Eastern District of Tennessee because Defendants' principal place of business is located in Knox County, Tennessee.

10.      A significant portion of the alleged causes of action arose and accrued in Powell, Tennessee and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Powell, Tennessee.

## PARTIES

### *Plaintiffs*

11.      Plaintiff Arianny Celeste Lopez ("Lopez") is a well-known professional model, and a resident of Los Angeles County, California.

12.      Plaintiff Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

13.      Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

14.      Plaintiff Denise Trlica a/k/a Denise Milani ("Milani") is a well-known professional model, and a resident of Los Angeles County, California.

15.      Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

16.      Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

17.      Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

18.      Plaintiff Keeley Rebecca Hazell ("Hazell") is a well-known professional model,

and a resident of Los Angeles County, California.

19.    Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Columbia.

20.    Plaintiff Paola Cañas ("Cañas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

21.    Plaintiff Katarina Van Derham ("Derham") is a well-known professional model, and a resident of Los Angeles County, California.

22.    Plaintiff Jessica Golden a/k/a Jesse Golden ("Golden") is a well-known professional model, and a resident of Los Angeles County, California.

23.    Plaintiff Tiffany Toth a/k/a Tiffany Gray ("Gray") is a well-known professional model, and a resident of Orange County, California.

24.    Plaintiff Vida Guerra ("Guerra") is a well-known professional model, and a resident of Los Angeles County, California.

25.    Plaintiff Heather Rae Young ("Young") is a well-known professional model, and a resident of Los Angeles County, California.

26.    Plaintiff Ina Schnitzer a/k/a Jordan Carver ("Carver") is a well-known professional model, and a resident of Germany.

27.    Plaintiff Masha "Malu" Lund ("Lund") is a well-known professional model, and a resident of New York County, New York.

28.    Plaintiff Tyran Richard ("Richard") is a well-known professional model, and a resident of Livingston Parish County, Louisiana.

***Defendants***

29.    Defendant, JOHN DOE ENTITY, is a company presumably formed under the laws of the state of Tennessee and registered to conduct business in. During times relevant to this action, JOHN DOE ENTITY operated MTM's Bar.

30.    According to publicly available records, Thomas J Pitner, in his capacity as principal, owner and/or CEO of MTM's Bar, maintained operational control over MTM's

including all advertising relating thereto.

## FACTUAL ALLEGATIONS

31. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

32. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

33. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

34. In the case of each Plaintiff, this apparent claim was false.

35. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

36. No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

37. Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

### *Plaintiffs' Individual Backgrounds and Careers*

38. Lopez is an American model, businesswoman, and celebrity. Lopez is recognized as one of the most consistent and most popular personalities of UFC where she has worked as an Octagon Girl since 2006. Lopez was the Co-Host of the popular Velocity TV show, Overhaulin'.

She is adored around the world for her exotic beauty and great relationship with her fans. Lopez booked her first modeling job when she was just four months old. She excelled in cheer, dance, and gymnastics before attending the University of Nevada Las Vegas (UNLV) to pursue a degree in Fitness Management and Nutrition. Fluent in Spanish, Lopez has quickly become one of the most sought-after talents in the modeling world and has appeared on the covers of some of the world's most foremost magazines including, Playboy, Maxim US, FHM, Maxim Korea, Maxim Philippines, FHM Australia and UFC magazines. In addition to modeling, Lopez has hosted television shows, appeared in short films and recorded some original music. Ms. Celeste is in an elite class of Social Media influencers with over 3 million Instagram followers, over 643,600 X followers, and an incredible 5.8 million fans on Facebook combined with her personal website.[1]

39. That we know of, Lopez is depicted in the photo in Exhibit "A" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Lopez was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

40. Lopez has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41. Electra is an actress, recording artist, author, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991 Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on Baywatch and MTV's Singled Out. She has since made the move to the big screen with starring roles in blockbuster hits including Scary Movie, Dirty

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

Love, Cheaper by the Dozen 2, and Meet the Spartans. Electra attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed the dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, Carmen Electra's Aerobic Striptease. In 2009, Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, Oy Vey, My Son is Gay and 2-Headed Shark Attack, alongside Charlie O'Connell, served as a guest judge on Britain's Got Talent, and made reoccurring guest appearances on CW's hit show, 90210. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry songstress was on fire, turning up the heat for audiences, including The Wendy Williams Show, Cyndi Lauper's Home For The Holidays charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has over 5 million Facebook followers, 1 million Instagram followers, and 383,000 Twitter followers.

42.     That we know of, Electra is depicted in the photo in Exhibit "B" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Electra was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

43.     Electra has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 71,600 Instagram followers.

45.     That we know of, Gibson is depicted in the photo in Exhibit "C" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Gibson was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

46.     Gibson has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Milani is the world's most famous pinup model, who is frequently named one of the most searched women on the internet. At one point, her self-titled website was the most popular model website in the world. Milani also became the winner of Miss Bikini World 2007. At 21, Milani was given an opportunity to model for SPORTSbyBROOKS as a sports model and posed for such publications as PinupFiles.com. In 2009, Milani was selected as the 99th most desired woman in the world by Askmen Magazine. In 2011, she was ranked in the 5th position in championship NPC Excalibur Bikini held in Culver City, California. Similarly, in the year 2013,

she was one of ten (10) most desirable women in the world. Milani's social media reach has hit over 703 thousand followers on Instagram, 7.9 million Facebook followers, and over 179,000 followers on X (formerly known as Twitter).

48.     That we know of, Milani is depicted in the photo in Exhibit "D" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Milani was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

49.     Milani has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.     Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, True Detective, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign. She is also a content creator, and has over 1.3 million Instagram followers, and her YouTube channel, shared with her husband, has over 2.28 million subscribers.

51.     That we know of, Pepaj is depicted in the photo in Exhibit "E" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Pepaj was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

52.     Pepaj has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.     Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob

Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands. In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.

54. That we know of, Voronina is depicted in the photo in Exhibit "F" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Voronina was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

55. Voronina has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56. Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In

2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

57.    That we know of, Hinton is depicted in the photo in Exhibit "G" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Hinton was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

58.    Hinton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

59.    Hazell is an English model, musician, singer and actress. Hazell became one of Britain's most successful glamour models, working with brands such as Page 3, FHM, Loaded, Nuts and Zoo Weekly. She has also made numerous television appearances and has appeared in films such as Horrible Bosses 2. At 17, she competed in The Daily Star's "Search for a Beach Babe" contest and won she then went on to study fashion at Lewisham College. She entered The

Sun's Page 3 Idol competition and was chosen as winner of £10,000 worth of "sexy clothes", "a one-year membership of the Rex cinema and bar", and a one-year exclusive glamour modelling contract with The Sun in December of 2004.Hazell has been regularly featured in Nuts and Zoo. She has been on the cover of The Sun's 2006 and 2007 Page 3 calendars, in addition to her own wall calendars; the 2007 edition selling 30,000 copies in its first few days of release. In June 2005, Hazell appeared on the front cover of Maxim magazine, and on the front cover of FHM in September. In January 2006, she appeared on the front cover of Loaded magazine. In 2007, Hazell and IT expert Gary Schwartz co-presented Byte Me TV, an online program that tried to explain technology in an easy to-understand way. In 2008, Hazell appeared in the BBC Three documentary Page Three Teens. Hazell released a pop music single called "Voyeur" and she along with agent Ginny Mettrick co-founded modelling agency Muse Management. In 2009, according to the August edition of Loaded, Peta Todd stated that Hazell had given modelling up to pursue a career in acting and that she was in America receiving acting lessons. Her last appearance on Page 3 of The Sun was on 30 September 2009. In 2010, Hazell had her first lead role in the short film Venus and the Sun, a comedic retelling of Ovid's myth, Venus and Adonis. Hazell had a small role in the film Like Crazy, which won both the Grand and a Special Jury Prize at the 2011 Sundance Film Festival. In 2012, Hazell played a supporting role in the British gangster movie St George's Day, which was directed by Frank Harper. In January 2013, Hazell made another return to modelling by appearing in FHM. Hazell was the face of Sony Computer Entertainment Europe's Formula One 06 video game for PlayStation 2, PlayStation Portable, and F1 CE for PlayStation 3. She is currently the face of MotorStorm: Pacific Rift for PlayStation 3. Hazell had a small role in the full-length version of Cashback, playing "Frozen Girl in Sainsbury's". In 2015, Hazell landed a role in E!'s first scripted drama, The Royals, as "Violet". Hazell starred in the 2013 comedy film Awful Nice and the 2015 horror film Whispers. She also appeared in the 2016 short film Queen of Hearts. She appeared in the 2018 TV Movie Vows of Deceit. Hazell was hailed by Conservative leader David Cameron in December 2006 as an "environmental hero" for her campaigns in The Sun, giving environmental tips such as turning lights off during the day. She was named alongside the

likes of David Attenborough, Prince Charles, and Arnold Schwarzenegger in the Tories' list. Hazell backed a major breast cancer awareness campaign for Breakthrough Breast Cancer. The campaign, called TALK TLC, aimed to promote Breakthrough's breast health message about the need to be aware of the signs and symptoms of breast cancer. Hazell has also signed up to take part in the Breakthrough Generations Study consisting of 100,000 women and spanning 40 years; the study aims to be the largest and most comprehensive of its kind.

60. That we know of, Hazell is depicted in the photo in Exhibit "H" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Hazell was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

61. Hazell has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

62. Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Bésame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically over 500,000 Instagram, Twitter, and Facebook followers.

63. That we know of, Davalos is depicted in the photo in Exhibit "I" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Davalos was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

64. Davalos has never been employed at Defendant's establishment, has never been

hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

65.     Cañas is a Colombian-born model now residing and working in the United States. With over twelve years in the industry, she has found great success as a model, host, runway model, and actress. Cañas has worked runway shows in her native Colombia, as well as in Mexico, Ecuador, the United States, and most recently Paris, France. She is best known for appearing on the cover of Playboy Mexico in May 2018. She has also led international campaigns and was a contracted model for Curve's worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Golf Tournament and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked with international brands and labels such as SOHO, KISS Underwear, Salon International, Zona Rosa, and Esteban Escobar. Cañas has appeared on numerous TV shows like FOX Sports and on networks such as Telemundo and TV Azteca. She continues to build an impressive profile and is in high demand in Miami, FL, New York, NY, and Los Angeles, CA. Cañas has over 1 million Instagram followers

66.     That we know of, Cañas is depicted in the photo in Exhibit "J" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Cañas was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

67.     Cañas has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

68.     Derham is a successful model, actress, philanthropist, and entrepreneur. As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the

world by magazines on 3 different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. This has not been repeated since. As an actress, she played opposite Bob Saget in the TV show, Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Currently, Van Derham is working on the movie, "Vendetta Vette". She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, VIVA GLAM. Her well-respected status gets her invited as a judge of model contests and beauty pageants around the globe. She has over 210,000 Instagram followers, over 11,000 Twitter followers, and over 190,000 Facebook followers.

69.     That we know of, Derham is depicted in the photo in Exhibit "K" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Derham was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

70.     Derham has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

71.     Golden is a successful model and businesswoman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Jesse shares her secrets on her own blog and also writes for many other magazines and sites. She's currently a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Jesse continues to expand her career through life experiences.

72.     That we know of, Golden is depicted in the photo in Exhibit "L" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Golden was

either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

73.     Golden has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

74.     Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368.7K X (formerly known as Twitter) followers.

75.     That we know of, Gray is depicted in the photo in Exhibit "M" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Gray was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

76.     Gray has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

77.     Guerra is a Cuban model currently living in the United States. Her first national exposure came when she appeared in a lingerie spread for FHM in December of 2002 and became

"FHM's "Model of the Year" in 2004. Since then, Guerra has been featured in many magazines, including DUB, Smooth, Escape, and Open Your Eyes. Guerra has made multiple appearances on several Spanish language television programs such as El Gordo y la Flaca (The Fat Guy and The Skinny Girl). She has also become a staple in music videos, appearing in "Shake Ya Tailfeather" performed by Nelly, P. Diddy, and Murphy Lee, from the Bad Boys II soundtrack, 2003, "The New Workout Plan" performed by Kanye West, 2004, and in "Obsession (No Es Amor)" performed by Frankie J ft. Baby Bash, 2005, among others. In addition, Guerra has appeared in a commercial for Burger King's Tender Crisp Bacon Cheddar Ranch, a number of sketches on The Chappelle's Show, and the film, "National Lampoon's Dorm Daze 2." She lent her voice to the video game, "Scarface: The World Is Yours." In 2005, Guerra was voted Number 26 in FHM's "Top 100 Sexiest Females" and has been named the winner of the magazine's "Best Butt Award". She also produced her own swimsuit calendars and accompanying "behind the scenes" DVDs and a 2006 DVD titled, "Vida Guerra: Exposed." She continues to be extremely in demand as a spokeswoman for fitness and fitness equipment, television shows, and movies. Guerra enjoys over 875,400 followers across Instagram and Twitter.

78.     That we know of, Guerra is depicted in the photo in Exhibit "N" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Guerra was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

79.     Guerra has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

80.     Young was chosen to be the Playmate of the Month in the February, 2010 issue of the famous men's magazine. In addition, Heather has also worked as a swimsuit, glamor, and lingerie model: She's been a spokes model for Captain Morgan, Smirnoff, Baileys, and Jose Cuervo, posed for both the 2010 Import Tuner calendar and the 2011 Fast Dates calendar, was

featured in an ad campaign for the Affliction Clothing Line, and has modeled for such clients as Calao Swimwear, DSO Eyewear, Carrie Amber lingerie, Hustler Lingerie, Superstar Swimwear, and 7 Til Midnight Lingerie. Young made a guest appearance as Tina in "The Baby" episode of the comedy TV series "Til Death". She is currently a recurring star on the Netflix hit series Selling Sunset, and is married to the FLip and FLop star Tarik El Moussa. Young is a regular in People Magazine. Heather has 2.7 million followers on Instagram, and 163,500 followers on Twitter.

81.     That we know of, Young is depicted in the photo in Exhibit "O" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Young was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

82.     Young has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

83.     Carver is a German glamour model and actress based in the United States. Jordan became a commercial spokeswoman for online German consumer electronics giant Redcoon. She set a record by appearing on the cover of Britain's Zoo magazine six times. Jordan won the contest for the racing sport seat production company COBRA and became their spokes model, a position she held until recently. She later won second place on the Top 100 Internet Model Newcomer of the Year list after being nominated by Break Media. She has over 2 million followers on Instagram, over 636,000 followers on Twitter, and over 18 thousand followers on Facebook.

84.     That we know of, Carver is depicted in the photo in Exhibit "P" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Carver was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

85.     Carver has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

86.     Lund is a famous Danish/Russian model, actress, and designer. Lund started modeling when she was a baby in TV commercials for baby food. After finishing business college, she was sponsored in the United States to model. She modeled in major ads for Rockstar Energy Drinks billboards that were displayed in 20 cities throughout the U.S. Lund has graced the covers of FHM, Maxim, Ralph, and People Magazine and been published in GQ, Mens Health, Esquire, Sports Illustrated and celebrity spread for Playboy magazine and was named one of the "Sexiest Women in the World" by FHM. She has had roles in The Pick of Destiny with Jack Black and Tenacious D, and Epic Movie with Carmen Electra. Lund was featured in music videos for Eminem, Lady Gaga, and many other big names. She also was a spokesmodel for several brands including, Dreamgirl Lingerie clothing company for eight years, and was featured on more billboards for 138 Water Company on Sunset Drive in Los Angeles and for Nialaya on Robertson Blvd. in LA. In 2010, she starred in a popular Danish reality TV show about career women from Denmark "living the dream" in Los Angeles, called Danske Hollywood Fruer. Lund has studied fashion, art and interior design as well as working on her own pet clothing line Hollywood Pet Couture. Lund is also an interior decorator, blogger, and endorser for several beauty companies.

87.     That we know of, Lund is depicted in the photo in Exhibit "Q" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Lund was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

88.     Lund has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

89.     Richards is an American model.  She is the Playboy Playmate for March 2007. Prior to becoming a Playmate, Tyran modeled for the Shirley of Hollywood lingerie catalog for

five years. A native of Louisiana, Tyran graduated from Southeastern Louisiana University with a degree in criminal justice in 2005. Tyran's calendar appearances include Car Sound & Performance, Beach Babes, Hawaiian Tropic Girls of South Beach, Molson, and Chica Rica Bikini Company. Her magazine appearances include Playboy, Maxim, Lovers Land, Hot Spot Plus, Sport Truck, Car Sound & Performance, Low Rider Euro, and Super Street.

90.    That we know of, Richards is depicted in the photo in Exhibit "R" to promote MTM on its Facebook page. This Image was intentionally altered to make it appear that Richards was either an employee working at MTM, that she endorsed MTM, or that she was otherwise associated or affiliated with MTM.

91.    Richards has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

92.    Defendants operate (or operated, during the relevant time period,) a so-called Gentlemen's Club, where they are (or were) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

93.    Defendants own, operate, and control MTM's social media accounts, including its Facebook, Twitter, and Instagram accounts.

94.    Defendants used MTM's Facebook, Twitter, and Instagram accounts to promote MTM's , and to attract patrons.

95.    Defendants did this for their own commercial and financial benefit.

96.    Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at MTM, endorsed MTM, or was otherwise associated or affiliated with MTM.

97.    Defendants used Plaintiffs' Images and created the false impression with the public

that Plaintiffs worked at or endorsed MTM to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

98. Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by MTM, and at no point have any of the Plaintiffs ever endorsed MTM or otherwise been affiliated or associated with MTM.

99. All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

100. Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

101. Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

102. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

103. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

104. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

105. Defendants were aware that, by using Plaintiffs' Images, they were violating

Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed MTM.

106. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

107. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with MTM.

108. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

109. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

110. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including MTM's website, Twitter, Facebook, or Instagram accounts.

111. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

112. Upon information and belief, the above acts of the Defendants were fraudulent, intentional and/or malicious and entitle Plaintiffs to punitive damages.

## **FIRST CAUSE OF ACTION**
### **(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

113. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

114. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein.

115. Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment, or endorsed Defendants'

businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

116. Thus, this was done in furtherance of Defendants' commercial benefit.

117. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggests the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

118. Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

119. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

120. Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

121. Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to

mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

122.     Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

123.     Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

124.     As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

125.     Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

126.     Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

127.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

128.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

129.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

130.    Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market Defendants' businesses, Defendants' establishment, and/or Defendants' establishment events and activities.

131.    Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and activities as described in this Complaint was false and misleading.

132.    Defendants' unauthorized use of Plaintiffs'' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

133.    Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants' establishment, as to the general quality of attendees and participants of Defendants' establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendants'

establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant establishment events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

134. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendant establishment events and activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

135. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

136. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

137. Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

138. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

139. Defendants' wrongful conduct as described herein was willful.

140. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

141. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

142. The method and manner in which Defendants used the image of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

143. Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

144. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act")

145. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

146. Each Plaintiff has identified herself in each of Plaintiffs' Images as set forth in the exhibits attached to this complaint and each Plaintiff alleges upon information and belief that her image is readily identifiable in each photograph.

147. Plaintiffs' Images have not been copyrighted under federal law.

148. Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act" the unauthorized use of a person's image or likeness for purposes of advertising goods or services or fundraising/soliciting donations, among other purposes is unlawful.

149. Defendants misappropriated Plaintiffs' likenesses by publishing their image and

likeness on Defendants' website or related social media accounts as part of Defendants' advertising campaign.

150. Defendants' use and publication of Plaintiffs' Images as set forth in the exhibits attached to this complaint was to advertise their establishment was for the purpose of advertising goods or services.

151. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

152. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

153. Defendants published, performed, distributed, transmitted or otherwise made available to the public each Plaintiffs' image and likeness with knowledge that the use was unauthorized.

154. Defendants knew or reasonably should have known that the use of Plaintiffs' Images was unauthorized.

155. Defendants' use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value or for purposes of comment, criticism, scholarship, satire, or parody.

156. Defendants never obtained Plaintiffs' consent for the use of their images and likenesses.

157. Defendants' use of each Plaintiffs' photographs and likenesses was willful and deliberate.

158. As a direct and proximate result of Defendants' scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendants' establishment, Defendants enjoyed increased revenues and profits.

159.     As a further direct and proximate result of Defendants' deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

160.     Under the Elvis Act, Plaintiffs are entitled to injunctive relief, destruction of any materials created in violation of the law; actual damages, plus any profits that are attributable to the violation.

**FOURTH CAUSE OF ACTION**
**(Common Law Right of Publicity)**

161.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

162.     Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

163.     Defendants misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

164.     Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

165.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

166.     Plaintiffs are  further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

167.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a

different product.

168. Upon information and belief, Defendants' use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendants.

169. At no point did any Defendant ever seek or receive permission or consent to use any Plaintiffs image and likeness for any purpose.

170. Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

171. At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their image and likeness.

172. Plaintiffs have been damaged in amounts to be proved at trial.

## FIFTH CAUSE OF ACTION
### (Violation of the Tennessee Consumer Protection Act of 1977, T.C.A. 47-18-101 to 47-18-570)

173. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

174. Defendants operated their website and social media accounts in order to promote Defendants' establishment, to attract clientele thereto, and to thereby generate revenue for Defendants.

175. As such, Defendants' operation of the website and social media accounts, and their publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Tennessee.

176. Defendants publication and use Plaintiffs' image and likeness was in a manner that Plaintiffs gave consent for the use of their Images, and/or created the false impression that Plaintiffs were either strippers working at Defendants' establishment, endorsed the same, or were otherwise affiliated, associated, or connected with Defendants.

177. As such, Defendants' intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendants.

178.   Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of Tennessee.

179.   Defendants' advertising practices offends the public policy of Tennessee insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

180.   Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

181.   Defendants advertising practices cause injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

182.   There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

183.   As a result of Defendants' unauthorized and misleading publication of Plaintiffs' image and likeness on their website and social media accounts, each of the Plaintiff's reputations was injured, and each of the Plaintiff's ability to market herself as a model was injured.

184.   As a result of Defendants' unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

185.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

186.   As detailed throughout this Complaint, Defendants have published and altered the image and likeness of Plaintiffs in order to promote their establishment to the general public and potential clientele.

187. Defendants' publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

188. None of these representations were true.

189. In publishing Plaintiffs' Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

190. Defendants were at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by Defendants, had no affiliation with Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

191. In the alternative, Defendants published the image and likeness of Plaintiffs with actual malice because they knew – or reasonably should have known – that Plaintiffs were not employed by Defendants, had no affiliation with Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

192. Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

193. Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Tennessee law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendant's establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

194. Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Tennessee law because said publication would tend to injure each Plaintiff

in her trade, business, and profession as a professional model.

195.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing the business, an inference which Defendants' publication of the image and likeness support.

196.     Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Tennessee law because, insofar as said publication falsely portrays each of the Plaintiffs as Defendants' employee, it imputes unchastity to her.

197.     Defendants' publication of Plaintiffs' image and likeness caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence/Respondeat Superior)

198.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

199.     Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

200.     Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

201.     Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

202. Similarly, Defendants further owed a duty of care to Plaintiffs to ensure that their promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendants.

203. Defendants breached their duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

204. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Tennessee law, were not violated. Defendants breached their duty of care to Plaintiffs by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

205. Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

206. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

207. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

208. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

209. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their image and likeness for their own use and financial gain.

210. As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness,

and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

211.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

212.   As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Defendants' establishment to the general public and potential clientele.

213.   Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendants.

214.   Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

215.   Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

216.   Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their establishment.

217.   Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

218.   As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

219.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

220.   Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

221.     Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

222.     Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at or endorse their establishment, or are otherwise affiliated with their establishment, Defendants have not compensated Plaintiffs.

223.     Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Defendants' Strip Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and T.C.A 47-18-101, *et seq.*;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and T.C.A 47-18-101, *et seq*.;

(e) For all damages available to Plaintiffs under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 ("TRPA" or "ELVIS Act");

(f) For all damages available to Plaintiffs under Tennessee Consumer Protection Act of 1977,T.C.A. 47-18-101 to 47-18-570;

(g) For such other and further relief as the Court may deem just and proper.

Respectfully submitted,


**/s/ Joe Bednarz, Jr.**
**JOE BEDNARZ, JR., #018540**
**BEDNARZ & BEDNARZ**
660 East Main Street
Hendersonville, TN 37075
(615) 256-0100
*Attorneys for Plaintiffs*