UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ARIANNY CELESTE LOPEZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS J. PITNER, individually, and as an officer, director, shareholder, member, and/or principal of JOHN DOE ENTITY d/b/a/ MTM'S BAR and JOHN DOE ENTITY d/b/a/ MTM'S BAR,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 3:25-CV-184-TAV-JEM |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on defendant Thomas J. Pitner's Motion for Partial Dismissal [Doc. 18]. Plaintiffs have not responded, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a). For the reasons below, Pitner's Motion for Partial Dismissal [Doc. 18] will be **GRANTED.**

## I. Background

Plaintiffs bring this action for damages and injunctive relief due to defendants' alleged misappropriation, alteration, and unauthorized publication of images of plaintiffs to promote their strip club, MTM's Bar ("MTM") [*See* Doc. 1]. Pitner is the principal, owner and/or Chief Executive Officer of MTM [*Id.* ¶¶ 1, 8, 30]. Defendant John Doe Entity is a company that operates MTM [*Id.* ¶¶ 7, 29]. Plaintiffs are well-known professional models who earn their livelihood modeling and licensing their images to companies, magazines, and individuals for advertising products and services [*Id.* ¶¶ 11–28, 31].

Plaintiffs allege that their modeling careers "place a high degree of value on their good will and reputation," which is essential to maximize their earnings, book modeling contracts, and establish their individual brands [*Id.* ¶ 32].

Ultimately, plaintiffs allege that defendants misappropriated and altered their images without their consent to make it seem like they endorsed, were associated with, or were employed by defendants [*Id.* ¶¶ 33–35]. Plaintiffs allege that they have incurred substantial monetary damage and harm to reputation, and they have not received any remuneration for defendants' use of their images [*Id.* ¶ 36]. Plaintiffs also assert that defendants misappropriated their advertising ideas by taking images from plaintiffs' personal social media pages, which they use to market to clients, grow their fan bases, and build their brands [*Id.* ¶ 37]. Plaintiffs attach copies of the alleged misappropriated images to the complaint [Doc. 1-2].

On April 29, 2025, plaintiffs filed this action alleging false association and false advertising under § 43 of the Lanham Act (Counts 1 and 2) [Doc. 1 ¶¶ 113–44]. Plaintiffs also allege violations of the Tennessee Personal Rights Protection Act of 1984 ("TPRPA") (Count 3), the common law right of publicity (Count 4), and the Tennessee Consumer Protection Act ("TCPA") (Count 5) [*Id.* ¶¶ 113–84]. Finally, plaintiffs assert claims of defamation (Count 6), negligence/respondeat superior (Count 7), conversion (Count 8), unjust enrichment (Count 9), and quantum meruit (Count 10) [*Id.* ¶¶ 185–223].[1]

[1] Pitner does not seek dismissal of the following claims: violations of the Lanham Act (Counts 1 and 2); violations of the TPRPA (Count 3); and a single claim for defamation asserted by plaintiff Eva Pepaj (Count 6) [Doc. 18, pp. 2, 15].

## II. Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or

unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## III. Analysis

### A. Matters Outside the Pleadings

Pitner contends that the Court may consider the images attached to plaintiffs' complaint in ruling on his motion to dismiss because the images give rise to each of plaintiffs' claims and are central to the allegations in the complaint [Doc. 18, pp. 2–3].

"Generally, courts may consider only the factual allegations in the pleadings when deciding a Rule 12(b)(6) motion to dismiss." *Tebault v. United States*, 778 F. Supp. 3d 912, 917 (W.D. Ky. 2025) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). However, the Sixth Circuit has held that "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss *so long as they are referred to in the Complaint and are central to the claims contained therein*." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (emphasis added).

Here, the social media posts attached to the complaint [Doc. 1-2] are referred to in the complaint and are central to the claims therein. Specifically, plaintiffs' claims are premised on defendants' alleged misappropriation and publication of plaintiffs' images on social media [*See* Doc. 1]. Thus, the social media posts are a central fact at issue, and the Court finds it appropriate to consider the images attached to the complaint in the context

of this Rule 12(b)(6) motion without converting the motion to one for summary judgment. *See Bassett*, 528 F.3d at 430.

**B. Conversion, Unjust Enrichment, and Quantum Meruit Claims**

Pitner first argues that plaintiffs' state law claims for conversion, unjust enrichment, and quantum meruit are pre-empted by the Copyright Act regardless of whether any of the images at issue are copyrighted [Doc. 18, pp. 6–7]. Pitner argues that the facts alleged by plaintiffs fall within the scope of 17 U.S.C. § 106, and the subject matter giving rise to plaintiffs' claims comes within the subject matter of copyright as tangible, pictorial works [*Id.* at 9]. Lastly, Pitner contends that plaintiffs assert a right equivalent to one protected by the Copyright Act because their claims depend on defendants' failure to compensate them for the use of their images [*Id.* at 10–11].

The Sixth Circuit has found that "Section 301 of the Copyright Act broadly preempts state law claims, and federal law vests exclusive jurisdiction over such preempted copyright claims in the federal courts." *Ritchie v. Williams*, 395 F.3d 283, 285 (6th Cir. 2005). Moreover, "[t]he Copyright Act is unusually broad in its assertion of federal authority." *Id.* at 286. "Rather than sharing jurisdiction with the state courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act[.]" *Id.* "This is a statement of the doctrine of complete preemption which recharacterize[s] a state law complaint . . . as an action arising under federal law." *Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 387 (Tenn. Ct. App. 2014) (internal quotation marks and citation omitted). Section 301 of the Copyright Act provides that:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any right or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

(2) any cause of action arising from undertakings commenced before January 1, 1978;

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106; or

(4) [s]tate and local landmarks, historic preservation, zoning, or building codes, relating to architectural works protected under section 102(a)(8).

17 U.S.C. § 301. At the outset, the Court notes that 17 U.S.C. § 301(b)(2) does not apply because plaintiffs have not alleged "any cause of action arising from undertakings commenced before January 1, 1978[.]" *Id.* § 301(b)(2). Further, 17 U.S.C. § 301(b)(4) does not apply because plaintiffs have not alleged any facts with respect to "[s]tate and local landmarks, historic preservation, zoning, or building codes[.]" *Id.* § 301(b)(4).

With this statutory framework in mind, the Court must address whether "(1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. § 102, 103' known as the 'subject matter requirement'; and '(2) the rights granted under

state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106' known as the 'equivalency' requirement." *ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 828 (E.D. Tenn. 2024) (quoting *Wrench LLC v. Taco Bell Corp*., 256 F.3d 446, 453 (6th Cir. 2001)).

### 1. Subject Matter Requirement

"The subject matter requirement of § 301 'is satisfied if a work fits within the general subject matter of § 102 and 103 of the Copyright Act, regardless of whether it qualifies for copyright protection." *Stanford v. Ceasar's Ent., Inc.*, 430 F. Supp. 2d 749, 755 n.4 (W.D. Tenn. 2006) (quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004)). "Section 102 of the Act provides that copyright protection subsists in 'original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated." *Id.* (quoting 17 U.S.C. § 102(a)). "Pictorial, graphic, and sculptural works" qualify as "works of authorship" subject to copyright protection. 17 U.S.C. § 102(a)(5).

Here, plaintiffs allege that defendants unlawfully used their images to gain potential clients and promote MTM [Doc. 1 ¶¶ 37, 210, 214, 222]. Thus, the images at issue here fall within the subject matter requirement of 17 U.S.C. § 301 because they are photographs that were allegedly altered and posted by defendants on social media. *See* 17 U.S.C. § 101 (defining "pictorial, graphic, and sculptural works" to include photographs); 17 U.S.C. § 103(a) (providing that the subject matter of copyright includes derivative works); *Wells*, 448 S.W.3d at 388 (finding that a photograph included in a brochure and later reproduced onto derivative works fell within the subject matter requirement of 17 U.S.C. § 301).

Moreover, it is immaterial whether any of the images at issue were copyrighted. *See Stanford*, 430 F. Supp. 2d at 759 n.4 ("Whether or not a copyright is registered with the United States Copyright Office has no bearing on the question of preemption under 17 U.S.C. § 301" (citation omitted)). Accordingly, plaintiffs' claims of conversion, quantum meruit, and unjust enrichment satisfy the subject matter requirement for preemption.

**2. Equivalency Requirement**

Turning to the second requirement, courts apply "a functional test to determine whether the state law right at issue is equivalent to any of the exclusive rights under Section 106 of the Copyright Act." *Stromback*, 384 F.3d at 301 (internal quotation marks omitted). The Sixth Circuit has stated:

> Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Id.* at 301 (quoting *Wrench*, 256 F.3d at 456).

**a. Conversion**

Here, plaintiffs allege that defendants committed unlawful conversion of their image and likeness [Doc. 1 ¶ 210]. "Conversion is the wrongful appropriation of another's tangible property; an action for the conversion of intangible personal property is not recognized in Tennessee." *Wells*, 448 S.W.3d at 392 (citing *Ralph v. Pipkin*, 183 S.W.3d 362, 368 (Tenn. Ct. App. 2005)). In *Wells*, the plaintiff alleged that the defendants

"converted the likeness, image and/or picture of [him] to their own use, thereby injuring [him]" and "are liable to [him] for this conversion in compensatory and punitive damages." *Id.* There, the court found that the plaintiff's conversion claim was preempted by the Copyright Act because it "center[ed] on intangible rights in the photograph and [sought] monetary damages for [the defendants'] use of the photograph on various objects (as opposed to an allegedly unlawful retention of the photograph or objects themselves)." *Id.*

Similarly, the complaint here alleges that plaintiffs had exclusive ownership of "all right, title[,] and interest in their image and likeness" and defendants "converted [p]laintiffs' property rights in their image and likeness for their own use and financial gain" [Doc. 1 ¶¶ 208–09]. As a result, plaintiffs seek damages from defendants' unlawful conversion of their "image and likeness" [*Id.* ¶ 210]. Thus, plaintiffs' conversion claims are premised on defendants' alleged unauthorized use of their "image and likeness," which are intangible property rights, rather than on conversion of a tangible object or photograph [*Id.*]. *See Wells*, 448 S.W.3d at 392 (finding that equivalency was met where the plaintiff's claim centered on intangible rights in a photograph).

Given that Tennessee law does not recognize a claim for conversion of intangible personal property, the rights asserted by plaintiffs are "abridged by an act which in and of itself would infringe one of the exclusive rights." *Stromback*, 384 F.3d at 301 (quoting *Wrench*, 256 F.3d at 456). Put another way, plaintiffs' conversion claims do not protect any property interest apart from the exclusive rights governed by the Copyright Act. Since plaintiffs' claims for conversion satisfy the subject matter and equivalency requirements, they are preempted by the Copyright Act and will be **DISMISSED**.

### b. Unjust Enrichment and Quantum Meruit

Plaintiffs also allege claims of unjust enrichment and quantum meruit [Doc. 1 ¶¶ 211–23]. Under Tennessee law, "[a]ctions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and *quantum meruit* are essentially the same." *AMISUB (SFH), Inc. v. Cigna Health and Life Ins. Co*., 681 F. Supp. 3d 842, 851 (W.D. Tenn. 2023) (emphasis in original) (internal quotation marks and citations omitted); *see also Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 762 (E.D. Tenn. 2009) (analyzing the plaintiff's unjust enrichment and contract implied in law claims together).

With respect to unjust enrichment, plaintiffs allege that defendants "benefit[ed] commercially due to their purported association with, employment of, and/or endorsement by [p]laintiffs" [Doc. 1 ¶¶ 214–15]. Specifically, plaintiffs assert that defendants were enriched by their unauthorized control over and publication of plaintiffs' images because the images helped defendants attract clients to MTM [*Id.* ¶ 216]. As for quantum meruit, plaintiffs allege that defendants availed themselves to the benefit of being associated with plaintiffs, and thus, they are "entitled to reasonable compensation for [d]efendant's unauthorized use of their image and likeness" [*Id.* ¶¶ 220–23].

"Courts generally find that claims for unjust enrichment and quantum meruit are preempted by the Copyright Act to the extent they are based on a defendant's violation of an exclusive right protected by the copyright law." *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 769 (N.D. Texas 2006); *Asunto v. Shoup*, 132 F. Supp. 2d 445, 453 (E.D. La. 2000) ("Claims for unjust enrichment usually are held to be pre-empted by the Copyright Act."); *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 290 (S.D.N.Y. 2005)

(determining that plaintiffs' unjust enrichment and quantum meruit claims were "preempted to the extent they address precisely the same issues as [the plaintiff's] copyright claims"); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 567 (D.N.J. 2002) (noting that "unjust enrichment claims relating to the use of copyrighted material are generally preempted"). With respect to equivalency, the Sixth Circuit has stated:

> For the purpose of the preemption analysis, there is a crucial difference between a claim based on *quasi*-contract, *i.e.,* a contract implied in law, and a claim based upon a contract implied in fact. In the former, the action depends on nothing more than the unauthorized use of the work. Thus, an action based on a contract implied in law required no extra element in addition to an act of reproduction, performance, distribution or display, whereas an action based on a contract implied in fact requires the extra element of a promise to pay for the use of the work which is implied from the conduct of the parties.

*Wrench LLC*, 256 F.3d at 459. In *Wrench*, the Sixth Circuit determined that a state law contract claim was not preempted by the Copyright Act because it was premised on a promise to pay for the use of the work. *Id.* at 456–57. The Sixth Circuit clarified that "[i]f the promise amounts only to a promise to refrain from reproducing, performing, distributing[,] or displaying the work, then the . . . claim is preempted." *Id.* at 457.

In this case, plaintiffs' unjust enrichment and quantum meruit claims rest on the assertion that defendants used their images without authorization and without paying them [Doc. 1 ¶¶ 214–15, 217, 221–23]. Unlike in *Wrench*, plaintiffs here have not alleged any facts demonstrating that defendants promised to pay for the use of their images [*Id.*]. *See Wrench*, 256 F.3d at 456–57. Given that plaintiffs have not alleged that there was a contract between the parties or a promise to pay for the use of the images, the Copyright Act is the

only source entitling plaintiffs to enforce their quasi-contract claims. *See Recursion Software*, 425 F. Supp. 2d at 769 ("In the absence of a contract between the parties, the only possible source entitling [the plaintiff] to enforce its quasi-contractual claims is the Copyright Act.").

Therefore, the Court finds that there is no distinction between the rights asserted by plaintiffs and the exclusive rights granted under the Copyright Act because plaintiffs' unjust enrichment and quantum meruit claims depend on defendants' failure to compensate them for the alleged commercial exploitation of their images [*Id.* ¶ 217]. *See Wells*, 448 S.W.3d at 391 (finding that the plaintiff's unjust enrichment claim was preempted by the Copyright Act because his claim depended only on the defendants' "purported failure to compensate him for the allegedly unauthorized reproduction of the photograph" at issue). In other words, plaintiffs' unjust enrichment and quantum meruit claims require no extra element "in addition to the acts of reproduction, performance, distribution or display[.]" *Stromback*, 384 F.3d at 301 (quoting *Wrench*, 256 F.3d at 456). Accordingly, plaintiffs' claims for unjust enrichment and quantum meruit are preempted by the Copyright Act, and they will be **DISMISSED**.

### C. Common Law Right of Publicity Claim

Next, Pitner argues that plaintiffs' common law right of publicity claims should be dismissed because the TPRPA supplants the common law right of publicity [Doc. 18, pp. 11–13]. Pitner cites *Marshall v. ESPN Inc.*, 111 F. Supp. 3d 815, 824 (M.D. Tenn. 2015) for the proposition that the TPRPA and the common law are co-extensive, and the statutory provision must prevail when there is conflict [*Id.* at 12].

"Tennessee's common law acknowledges a 'property right in the use of one's name, photograph or likeness.'" *Marshall*, 111 F. Supp. 3d at 824 (quoting *Polygram Records, Inc. v. Legacy Ent. Grp., LLC*, 205 S.W.3d 439, 445 (Tenn. Ct. App. 2006)). Additionally, "Tennessee provides a statutory protection to that right." *Id.* Specifically, "the Tennessee Legislature codified the right of publicity in 1984 when it enacted the [TPRPA]." *Id.* (quoting *Gauck v. Karamian*, 805 F. Supp. 2d 495, 500 (W.D. Tenn. 2001)). The TPRPA provides that:

> [a]ny person who knowingly uses or infringes upon the use of an individual's *name, photograph, voice, or likeness* in any medium, in any manner directed to any person other than such individual, for purposes of advertising products, merchandise, goods, or services, or for purposes of fundraising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent, . . . is liable to a civil action.

Tenn. Code Ann. § 47-25-1105(a)(1) (emphasis added). The TPRPA "was intended to create an inheritable property right for those people who use their names or likenesses in a commercial manner, such as an entertainer or sports figure—someone who uses his or her name for endorsement purposes." *Marshall*, 111 F. Supp. 3d at 824 (internal quotation marks and citations omitted).

In *Marshall*, several collegiate student-athletes filed a class action against athletic conferences, broadcasting networks, and licensing agencies, alleging that the defendants' use of their "names, images, and likenesses" violated their publicity rights. *Id.* at 821. The plaintiffs asserted violations of the right to publicity under the Tennessee common law and the TPRPA. *Id.* at 823. Ultimately, the court found that "the TPRPA supplants whatever right to publicity that may exist under the common law." *Id.* at 824. The court reasoned

that "the statutory and common law rights to publicity are 'co-extensive'." *Id.* (citing *Moore v. Weinstein Co., LLC*, No. 3:09-CV-166, 2012 WL 1884758, at *30 (M.D. Tenn. May 23, 2012); and then citing *Gauck*, 805 F. Supp. 2d at 500 n. 5). Further, the court noted that "[w]hen there is a conflict between the common law and a statute, the provision[s] of the statute must prevail." *Id.* at 825 (internal quotation marks and citations omitted).

The Court finds that *Marshall* is instructive in this case. *Marshall*, 111 F. Supp. 3d at 824. Like in *Marshall*, plaintiffs here bring claims under both the TPRPA and the common law right of publicity based on the unauthorized use of their "names, images, and likenesses" [Doc. 1 ¶¶ 145–72]. *Marshall*, 111 F. Supp. 3d at 821–23. Plaintiffs' common law claims are based on the same conduct as their statutory claims, namely, defendants' unauthorized publication of plaintiffs' image and likeness on defendants' social media accounts [Doc. 1 ¶¶ 145–72]. Moreover, like in *Marshall*, plaintiffs' TPRPA and common law claims seek to protect the same underlying interest—the use of their names and likenesses in a commercial manner. *See Marshall*, 111 F. Supp. 3d at 824; *see also* Tenn. Code Ann. § 47-25-1105(a)(1) (protecting "the use of an individual's name, photograph, voice, or likeness" in a commercial manner). In addition, plaintiffs have not alleged any independent right to publicity apart from the use of their name, image, and likenesses [*See* Doc. 1 ¶¶ 145–72].

Given that the TPRPA and common law right of publicity are "co-extensive" as applied to the conduct alleged here, the Court finds that plaintiffs' common law right of publicity claims are subsumed by the TPRPA. *See Marshall*, 111 F. Supp. 3d at 824 (citing

*Moore*, 2012 WL 1884758, at *30; and then citing *Gauck*, 805 F. Supp. 2d at 500 n. 5). Therefore, plaintiffs' common law right of publicity claims will be **DISMISSED**.

### D. TCPA Claims

In addition, Pitner contends that plaintiffs' TCPA claims fail because plaintiffs are not "consumers" within the meaning of the TCPA [Doc. 18, p. 13]. Specifically, Pitner argues that plaintiffs have not alleged that they acted as consumers in any transaction with Pitner or that they acquired any goods, services, or property from him [*Id.* at 13–14]. As such, Pitner argues that plaintiffs have not stated a claim upon which relief can be granted as to their TCPA claims [*Id.*].

The TCPA serves "[t]o protect *consumers* and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state[.]" Tenn. Code Ann. § 47-18-102(2) (emphasis added). Several courts have similarly noted that the TCPA aims to protect consumers. *See Killingsworth v. Ted Russell Ford Inc.*, 205 S.W.3d 406, 410 (Tenn. 2006) (noting that the TCPA is meant "to protect consumers and legitimate business enterprises" (citation omitted)); *see also Tucker v. Sierra Builders*, 180 S.W.3d 109, 114 (Tenn. Ct. App. 2005) ("[O]ne of the express purposes of the TCPA is to provide additional, supplementary state law remedies to consumers victimized by unfair or deceptive business acts or practices that were committed in Tennessee in whole or in part."). Moreover, "Tennessee courts have consistently held, 'legitimate business enterprises' under section 47-18-102(2) only include those acting as consumers'." *LP Env't, LLC v. Delfasco, LLC*, No. 3:14-CV-2167, 2015 WL 13145789, at *2 (M.D. Tenn. July 23, 2015). The TCPA provides that:

> "Consumer" means any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated or any person who purchases or to whom is offered for sale a franchise or distributorship agreement or any similar type of business opportunity.

Tenn. Code Ann. § 47-18-103(6).

Here, the basis for plaintiffs' TCPA claim is that defendants operated their website and social media accounts to promote MTM, attract clients, and generate revenue [Doc. 1 ¶ 174]. As such, plaintiffs allege that defendants' publication of plaintiffs' images "was consumer-oriented in nature and occurred in the trade and commerce with the State of Tennessee" [*Id.* ¶ 175]. However, plaintiffs have not set forth any facts demonstrating that they are consumers within the meaning of the TCPA or that they sought to acquire any goods, services, property, or other things of value from defendants. *See* Tenn. Code Ann. § 47-18-103(6).

Rather, plaintiffs allege that defendants used their image and likeness without authorization. *See Wagner v. Fleming*, 139 S.W.3d 295, 301 (Tenn. Ct. App. 2004) (finding that the plaintiff was not a consumer within the meaning of the TCPA because "he was not seeking to purchase anything from [the defendants]"); *see also Hood Land Tr. v. Hastings*, No. M2009-2625-COA-R3-CV, 2010 WL 3928647, at *9 (Tenn. Ct. App. 2010) (determining that the plaintiff was not a consumer under the TCPA because he was a seller). Given that plaintiffs have not set forth any facts alleging that they acted as consumers in any transaction with defendants, plaintiffs' TCPA claims will be **DISMISSED.**

### E. Defamation Claims

Pitner also moves to dismiss plaintiffs' defamation claims as time-barred under the one-year statute of limitations for libel claims in Tennessee, except for one image depicting Pepaj that allegedly falls outside of the statutory period [Doc. 18, p. 15].[2]

"In Tennessee, the tort of defamation can take either the form of libel or slander, and '[a] libel action involves written defamation and a slander action involves spoken defamation'." *Walker v. Seyfer*, No. 2:24-CV-223, 2025 WL 3211223, at *2 (E.D. Tenn. Nov. 17, 2025). "For libel, the statute of limitations is one year 'after the cause of action accrued[.]'" *Id.* (quoting Tenn. Code Ann. § 28-3-104(a)(1)).

In this case, plaintiffs allege that defendants' publication of their image and likeness constitutes defamation because the publication falsely accuses plaintiffs of working for or endorsing MTM [Doc. 1 ¶ 193]. The challenged images at issue were posted on social media between August 12, 2014, and August 25, 2023 [*See* Doc. 1-2]. Plaintiffs initiated this lawsuit on April 29, 2025 [Doc. 1]. Therefore, the statute of limitations expired, at the latest, on August 25, 2024. *See* Tenn. Code Ann. § 28-3-104(a)(1).

Moreover, the Court does not find that this case is among "that limited class of libel cases which, because of the secretive or inherently undiscoverable nature of the publication, the plaintiff did not know, or with reasonable diligence could not have

[2] Pitner states that one image of Pepaj was allegedly published on March 17, 2025 [Doc. 18, p. 16]. Upon a review of the record, it is unclear when the image was published [*See* Doc. 1; Doc. 1-2, pp. 11–16]. Therefore, the Court will limit its analysis to plaintiffs' remaining defamation claims.

discovered, that he had been defamed." *Kinser v. Bechtel Power Corp.*, 868 F. Supp. 2d 702, 709 (E.D. Tenn. 2012) (citation omitted). Here, the alleged misappropriated images were posted to public social media accounts that could have been discovered by plaintiffs with reasonable diligence [*See* Doc. 1-2]. Thus, the Court finds that more than one year before filing this case plaintiffs knew or with reasonable diligence could have discovered that they had been defamed. *See Kinser*, 868 F. Supp. 2d at 709 ("This is therefore not one of the exceptionally rare libel cases where Tennessee's discovery rule operates to toll the statute of limitations."). Accordingly, plaintiffs' defamation claims based on images published on or before August 25, 2023, are time-barred, and they will be **DISMISSED**.

**F. Negligence Claims**

Lastly, Pitner argues that plaintiffs' negligence claims should be dismissed because the "substantial point" of the complaint is defamation, and the one-year statute of limitations has run [Doc. 18, p. 16]. Specifically, Pitner contends that plaintiffs' negligence claims are based on the intentional publication of certain images, and plaintiffs have not alleged that Pitner negligently published any images of them [*Id.* at 17]. Thus, the Court must determine whether plaintiffs' negligence claims sound in defamation, which has a one-year statute of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(1).

In Tennessee, "[t]he choice of the correct statute of limitations is made by considering the 'gravamen of the complaint.'" *Redwing v. Catholic Bishop of Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012) (quoting *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006)). This phrase "refers to the 'substantial point,' the 'real purpose,' or the 'object' of the complaint." *Id.* (quoting *Est. of French v. Stratford House*, 333 S.W.3d 546,

557 (Tenn. 2011)). "Determining the 'gravamen of the complaint' is a question of law." *Id.* (quoting *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 638 (Tenn. 2003)). "Where a plaintiff asserts multiple claims, 'courts must ascertain the gravamen of each claim, not the gravamen of the complaint in its entirety'." *Alsbrook v. Concorde Career Colls., Inc.*, 469 F. Supp. 3d 805, 824 (W.D. Tenn. June 25, 2020) (quoting *Benz-Elliot v. Barrett Enters., LP*, 456 S.W.3d 140, 149 (Tenn. 2015)). In doing so, courts consider "the *basis of the claim* and the *type of injuries* for which damages are sought." *Benz-Elliot*, 456 S.W.3d at 149 (emphasis in original).

Upon review of the complaint, it appears that the object of the plaintiffs' negligence claims is the intentional tort of defamation. First, plaintiffs' negligence and defamation claims seek damages for the same injury, namely, defendants' alleged publication of plaintiffs' images without their consent [*Compare* Doc. 1 ¶¶ 185–97 *with id.* ¶¶ 198–206].

Second, the basis for plaintiffs' negligence and defamation claims is the same. Specifically, plaintiffs allege that defendants owed them a duty to ensure that their advertising and/or promotions materials did not infringe on plaintiffs' property and publicity rights and did not falsely portray a connection between plaintiffs and defendants [Doc. 1 ¶¶ 201–02]. Plaintiffs allege that defendants breached their duty of care by "failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive" [*Id.* ¶¶ 203–04]. They also assert the defendants breached their duty of care by

negligently hiring, screening, retaining, supervising, and/or training" employees and agents [*Id.* ¶ 205].

Although plaintiffs label their claims as ones for negligent hiring, supervision, and retention, the claims are rooted in defendants' intentional publication of their images without consent or authorization. *See Lattibeaudiere v. AMR Servs. Corp.*, No. 95-CV-5269, 1996 WL 518076, at *5 (E.D.N.Y. 1996) ("Here, the gravamen of plaintiff's complaint is intentional conduct by defendants, and his negligent hiring and retention claims are merely asserted in an effort to avoid the one-year statute of limitations for intentional torts."); *see also Torres v CBS News*, 879 F. Supp. 309, 316 (S.D.N.Y. 1995) (treating the plaintiff's negligence claim as a defamation claim and applying the one-year statute of limitations). Moreover, plaintiffs do not allege that Pitner negligently published any images of plaintiffs [*See* Doc. 1]. Since plaintiffs' negligence claims sound in defamation, they are time-barred under the one-year statute of limitations governing libel claims as discussed above. *See supra* III.E. Therefore, the Court plaintiffs' negligence claims will be **DISMISSED.**

## IV. Conclusion

For the reasons above, Pitner's Motion for Partial Dismissal [Doc. 18] is **GRANTED.**

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE